UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ISAAC HARRIS, on behalf of
himself in Pro Per,

     CASE NO. 10-11384

   Plaintiff,    HON. MARIANNE O. BATTANI

v.

THE MEMBERS OF THE BOARD
OF GOVERNORS OF WAYNE
STATE UNIVERSITY, et al.,

   Defendants
             /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  Now before the Court is Plaintiff John Harris' Motion for Partial Summary Judgment on Liability (Doc. No. 57), and Defendants' Motion for Summary Judgment (Doc. No. 68). The Court has reviewed all of the filings and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(f)(2). For the reasons that follow, Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED**.

**I. BACKGROUND**

  Plaintiff John Harris filed suit on April 20, 1010, alleging that numerous Defendants[1]

---

[1]Defendants include Members of the Board of Governors of Wayne State University (WSU), Richard Bernstein, Tina Abbott, Eugene Driker, Debbie Dingell, Diane L. Dunakiss, Paul E. Massaron, Annetta Miller, and Gary S. Pollard; the President of WSU, Ham Noren; the Provost, Dr. Nancy S. Barrett; the Dean, College of Liberal Arts and Sciences, Robert L. Thomas; the Associate Provost and Dean of the Graduate School, Mark Wardell; the Director of Office of Equal Opportunity, Christopher Jones; the Administrate Assistant, Tommy Martin, and Specialist, Amy Storling; the

discriminated against him during the admissions process to graduate school at Wayne State University ("WSU"). Plaintiff, a fifty-four year old, black male, brought suit after he was denied admission into the graduate program in the Political Science Department in 2008. At the time he applied, Harris held a Master's of Arts Degree in teaching from WSU, which he earned in 2006.

Plaintiff first applied for the Masters in Public Administration program in 1986. When he applied, Harris' undergraduate grade point average ("GPA") was 2.48, and his Graduate Record Examination (GRE) scores had not been received. Nevertheless, Harris was admitted conditionally based upon his performance during his senior year, which showed considerable improvement. According to Defendant Richard Elling, the results of the GRE, which were received in December 1986, were below the minimum requirements, and Harris would not have been admitted based on the scores. (Doc. No. 68, Ex. C). Harris dropped out of the program after he received two "C" grades, which are considered failing in the program. Harris subsequently filed a lawsuit in Wayne County Circuit Court, alleging that his grades were the result of racial discrimination by his professors, including several defendants in this lawsuit, Parrish, Elling, and Elder. WSU successfully defended the discrimination claim.

In the Opinion & Order Granting Motion for Summary Disposition, dated June 19, 1989, the state court judge ruled:

Plaintiff alleges he was forced to resign from a Master's Degree program at

---

Chair of Political Science, Daniel S. Gellar; Andrea Harp, Associate Registrar Academic Records, Kurt Kruschinska; Academic Services, Patricia Robinson; Professor, Department of Political Science, Lawrence Scaff; and Professors, Charles J. Parrish, Richard Clement Elling, and Charles David Elder.

> Defendant University because he was unfairly graded and evaluated. The evidence does not bear out this allegation. There is no evidence to support his claim that Defendant rejected him or treated him differently because of his race. To the contrary, the evidence supports Defendant's claim that Plaintiff was unsuccessful in the program because of his unsatisfactory performance. Plaintiff has failed to make out a prima facie case of racial discrimination under the Elliott-Larsen Act. . . .

(Id.)

Harris applied for admission in the Political Science Graduate Program in 2008, and he alleges that Parish, Elling, and Elder were involved in the decision to deny Plaintiff admission. Contrary to Plaintiff's allegation, Defendant Professor Lawrence Scaff asserts that he made the decision to deny Plaintiff admission. (Doc. No. 68 Ex. A, ¶ 2). According to Scaff, his admissions decisions were based upon a review of an applicant's GPA and transcripts, GRE results, the applicant's personal statement, letters of recommendation, a sample of written work, and the student's fit with the program and any special contributions. (Id., ¶ 5).

Harris submitted three Change of Graduate Status Request forms, seeking admission into the program. He submitted his first request on June 3, 2008, asking for admission into the Ph.D. Public Policy Program. He filed a second Change of Graduate Status Request on September 5, 2008, which was identical to the first, except Plaintiff changed the box selection from a request to leave one program to a request to add a program. Scaff asserts that the change had no bearing on the application decision. (Id., ¶ 4). Scaff denied both applications. Plaintiff subsequently emailed Scaff about the denial. In his response to Plaintiff's email, Scaff wrote, "Unfortunately we were not able to admit you to the program because of your academic record and lack of preparation in Political Science, which included two grades of "C" in graduate courses. . . . (Doc. No. 68, Ex. H).

3

Plaintiff submitted his third Change of Graduate Status Request form on November 21, 2008. In his third request, Harris sought admission to the Master of Arts ("M.A.") Program in Political Science rather than the Ph.D. program. Scaff reviewed and denied this application as well. (Doc. No. 68, Ex. A, ¶ 4, Ex. D). The notice of denial incorrectly identifies the program as the Ph.D. program, not the M.A. program. (Doc. No. 68, Ex. I). Scaff asserts that the error is inconsequential because the same admissions standards apply to both programs.

According to Scaff, he presumed Harris was a male based on his name, but did not know Plaintiff's race or age at the time the admission decision was made. (Doc. No. 68, Ex. A, ¶ 9). Scaff states his decision was based on Plaintiff's 3.11GPA in the College of Education graduate program, which was below 3.0 for three semesters. (Doc. No. 68, Ex. A, ¶ 6.a). Scaff asserts that a 3.0 GPA is the minimum requirement for admission to the Political Science Program, which he regards as having a more demanding grading standard than the College of Education. (Id.) In addition, Plaintiff had taken three Graduate classes from Political Science faculty and received low grades-- a "B-" and two "Cs". (Id., ¶ 6.b). Plaintiff failed to submit a current GRE score, and he did not submit documentation showing a compensating strength in another related social science discipline. (Doc. No. 68, Ex. A, ¶¶ c, d).

When Plaintiff applied, he was one of eight applicants to the Masters Program. (Id., ¶ 10). Three were admitted: two males and one female. Four men, including Harris, and one woman were rejected. (Id., ¶ 10). The rejected candidates included two Caucasians, and two candidates younger than Harris. (Id.) The female who was admitted had a higher GPA, was an honors student in Political Science as an undergraduate, had a GRE score

in excess of the minimum, and submitted transcripts, a personal statement, a writing sample and letters of recommendation. (Id.) One of the males admitted had a GPA significantly higher than Plaintiff's, his GRE score exceeded the admissions standard, and he was an honors student in a related social science. Moreover, he submitted all the required materials. (Id.)

The other male student had a lower undergraduate GPA, but had attended law school and earned a GPA higher than required by the program. His GRE score was the highest of all applicants. (Id.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

**III. ANALYSIS**

The Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–07[2]; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)[3]; and Title VI, 42 U.S.C. § 2000d[4] prohibit discrimination based on age, race, and sex relative to the admission to WSU. These claims are analyzed under the same burden shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. See e.g. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 617 n. 1, (1999) (Thomas, J., dissenting) ("This Court has also looked to its Title VII interpretations of discrimination in illuminating Title IX"); Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1176 (10th Cir.2001) ( "Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims").

Plaintiff has no direct evidence of discrimination. To the extent that he relies on

---

[2]The Age Discrimination Act of 1975, 42 U.S.C. § 6101, provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."

[3]Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), which provides in pertinent part:
> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance. . . .

[4]Title VI, 42 U.S.C. § 2000d, which reads:
> No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance.

conduct that occurred in 1986 and 1987, to support his assertion that he was denied admission in 2008, the Court finds the evidence is barred by res judicata. "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." Abbott v. Michigan, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Michigan employs a "broad view of res judicata," In re MCI Telecommunications Complaint, 596 N.W.2d 164, 183 (Mich. 1999), and " 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first, " Abbott, 474 F.3d at 331 (quotation omitted). In this case, the state court held as a matter of law that Plaintiff's unsuccessful performance, and not unfair grading based upon his race, led to his resignation from the Master's Degree program. (Doc. No. 68, Ex. B). Accordingly, the Court rejects Plaintiff's theory that the events occurring at that time support this claim that the discrimination is ongoing.

In the alternative, Harris may advance circumstantial evidence of discrimination, which the Court analyzes under the burden shifting framework developed in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under the Title VII framework, set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), as adapted to Plaintiff's claims here, Harris must show that he was denied admission to a federally financed program because of race, gender and/or age, and that the discriminatory motivation was a determining factor in the denial of admission. Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir. 1996).

To establish a prima facie case of discrimination, Harris must demonstrate that (1) he is a member of the protected class; (2) he was qualified for admission to the program;

(3) he has not admitted; and (4) the circumstances surrounding that action give rise to an inference of age discrimination. McDonnell Douglas, 411 U.S. at 802. If Harris makes a prima facie case, the burden of production shifts to Defendants to offer a legitimate, nondiscriminatory rationale for their actions. See Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248, 254–55 (1981). If they do so, the presumption of discrimination dissipates and the burden shifts back to Harris to prove that the stated reasons are merely pretextual and that discrimination was the true reason for the adverse admission action. See St. Mary's Honor Ctr v. Hicks, 509 U.S. 502, 510–11 (1993).

When the Court denied Defendants' request for dismissal, it found that the complaint included allegations sufficient to make a prima facie case of discrimination under McDonnell Douglas. At this stage of the proceedings, however, Harris must support his allegations with admissible evidence. He has failed to do so because he cannot show that he met the qualifications for admission. The Graduate Bulletin, 2008-1010 (Doc. No. 68, Ex. E), sets forth the admission requirements. Applicants with a master's degree in another field with a grade point average of 3.30 were not required to submit GRE scores. (Id.). The Change of Graduate Status Request Form (Doc. No. 68, Ex. F), likewise advises the applicant that "[m]any programs require recommendation letters and additional materials as part of their admission process; please submit such material directly to the new program." Plaintiff failed to submit GRE scores, and he was required to do so.

Moreover, even if he had been qualified, there is no evidence of pretext. After reading Plaintiff's deposition testimony, the Court finds reasonable jurors could not find a scintilla of evidence to support Plaintiff's belief that he suffered discrimination. To the extent that Plaintiff believes a similarly situated nonprotected applicant was treated more

favorably, there is no evidence. Plaintiff advances his theory at ¶ 61 of his Complaint.

> Fact, how can the three applicant be more superior in qualifications than the complainant if they do not hold a Graduate Degree from any college or university or the type of community background of the complainant. The Plaintiff would question this as if the Director and committee are only making this statement base[d] on [ ] race.

Simply put, no evidence that the reasons given for the decision to deny Plaintiff admission into the graduate program had no basis in fact. Nor is there any evidence that the reasons given did not actually motivate the decision. Finally, there is no evidence to suggest that the reasons given were insufficient to justify the decision. Plaintiff's belief that he was more qualified because he had attained a Masters degree and because of his experience are insufficient as a matter of law to demonstrate that he was qualified for admission.

## IV. CONCLUSION

Now, therefore, the Court **DENIES** Plaintiff's motion, and **GRANTS** Defendants' motion.

**IT IS SO ORDERED.**

                                       s/Marianne O. Battani
                                       MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

Date: August 26, 2011

## CERTIFICATE OF SERVICE

Copies of this Opinion and Order were mailed and/or electronically filed to counsel of record and Plaintiff on this date.

                                       s/Bernadette M. Thebolt
                                       Case Manager